| | | |
|---|---|---|
| BEL AIR AUTO AUCTION, INC. | * | IN THE |
| 4805 Philadelphia Road | | |
| Belcamp, MD  21017 | * | CIRCUIT COURT |
| | | |
| Plaintiff, | * | FOR |
| | | |
| v. | * | HARFORD COUNTY |
| | | |
| CHUBB LIMITED | * | |
| c/o Chubb Group of Insurance | | C-12-CV-20-000596 |
| Companies | * | Case No.: _____ |
| 202B Hall's Mill Road | | |
| Whitehouse Station, NJ  08889 | * | |
| | | |
| SERVE ON: | * | |
| Maryland Insurance Administration | | |
| 200 St. Paul Place, Suite 2700 | * | |
| Baltimore, MD  21202 | | |
| | * | |
| And | | |
| | * | |
| GREAT NORTHERN INSURANCE | | |
| COMPANY | * | |
| 100 S. 5th Street Ste. 1800 | | |
| Minneapolis, Minnesota | * | |
| 55402-1255 | | |
| | * | |
| SERVE ON: | | |
| Maryland Insurance Administration | * | |
| 200 St. Paul Place, Suite 2700 | | |
| Baltimore, MD  21202 | * | |
| | | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## Complaint For Declaratory Judgment

Plaintiff, Bel Air Auto Auction, Inc., sues Defendants, Chubb Limited and

Great Northern Insurance Company (collectively, "Chubb") and states:

1

## I.
## Introduction

1.      This suit seeks a declaratory judgment that coverage exists under the business interruption provisions in a property insurance policy issued by Great Northern Insurance Company, as one of the Chubb Group of Insurance Companies, for the Bel Air Auto Auction, Inc. A correct copy of the Chubb Policy is attached as Exhibit 1 and has been Bates numbered for ease of reference. The Chubb Policy covers the facility at 4805 Philadelphia Road, Belcamp, Maryland and those specific locations listed in the policy. Exhibit 1 at CHUBB 000020. The suit does not at this time ask for monetary damages for breach of contract, subject Bel Air Auto Auction's right to enforce any declaratory judgment entered in its favor through an award of monetary damages as authorized by Md. Code Ann., Cts. & Jud. Proc. § 3-412.

## II.
## The Parties

2.      Bel Air Auto Auction is a Maryland corporation based in Harford County Maryland, where it conducts its business and affairs.

3.       Great Northern Insurance Company is a subsidiary of Chubb Limited that issues policies of property insurance and is one of the Chubb Group of Insurance Companies.

4.      Chubb Limited is a publicly traded corporation organized under the laws of Switzerland and the parent company of Great Northern. Chubb Limited is one of the largest domestic property and casualty insurers with operations in 54 countries and with, as of 2019, assets of over $176 billion and revenue of over $34

2

billion. Chubb Limited has several duties to the holders of policies issued by Great Northern, including receiving notices of loss from and claims for coverage by policy holders and managing claims from Great Northern policy holders.

### III.
### Background Facts

**A.    SARS-Cov-2 and Covid 19**

5.    Coronaviruses are respiratory viruses that cause illness in humans and include Middle East Respiratory Syndrome (MERS) and Sever Acute Respiratory Syndrome (SARS).

6.    In December 2019, a new strain of respiratory virus belonging to the coronavirus family of viruses was identified in Wuhan, Hubei Providence, China. The new coronavirus, dubbed the novel coronavirus (nCoV) because it had never before been identified, can cause severe respiratory illness in people and can result in the death of those it infects. The new virus was officially named SARS-Cov-2, and is the virus that causes the disease known as COVID-19. While somewhat less deadly than SARS, SARS-Cov-2 is much more infectious than SARS and spreads much more readily. COVID-19 has resulted in millions of infections and deaths world-wide.

7.    SARS-Cov-2, as a virus, is a microscopic, invisible inorganic physical substance that can cause loss or damage to property on which it locates or in which it is in the proximity of at any one time or during any period.

8.    By February 2020, COVID-19 had appeared in the United States, as well as over 90 other countries. Because of its highly infectious nature and world-

3

wide presence, the World Health Organization on January 30, 2020 declared the outbreak of COVID-19 a public health emergency of international concern. On March 11, 2020, the World Health Organization officially declared COVID-19 a pandemic (defined by the World Health Organization as a worldwide spread of a new disease). Following these developments, on March 13, 2020, a national emergency was declared in the United States due to the spread of COVID-19.

9.      COVID-19 is a highly infectious disease that can be spread in numerous ways. The most common method of spread is between people in close contact with each other (meaning less than 6 feet). Respiratory droplets from the mouth or nose are the main transmitter and can be spread when an infected person coughs, sneezes, exhales, talks, or even breaths. The contaminated respiratory droplets can be transmitted to the mouth, nose, or eyes of another person who then becomes infected.

10.      The respiratory droplets also can be aerosolized and linger in the air for an unspecified time, ranging from a few seconds to hours, until gravity ultimately forces the aerosolized respiratory droplets from the air to a surface, such as a floor, door, wall, computer keyboard, and so on. The aerosolized respiratory droplets can remain on a surface and able to contaminate anyone coming in contact with the infected surface for undefined periods ranging from hours to several days. The aerosolized droplets can spread through normal air flow and even settle on surfaces some distance away from the infected person.

11.      While COVID-19 has discernable symptoms, such as fever and chills, coughing, sore throat, sneezing, congestion, and running nose, many people are

asymptomatic and have COVID-19 while manifesting no outward symptoms or signs of illness. These asymptomatic people, like their counterparts with obvious symptoms, can spread the disease.

12. SARS-Cov-2, the virus causing the disease, and COVID-19, the disease resulting from the virus, can be present at an insured premises in various ways, including respiratory droplets in the air at or surrounding insured property, on the surfaces of object or tangible things (called fomites) at the insured property, and in persons infected with the disease, such as customers, employees, and service providers (whether symptomatic or asymptomatic) who are in the proximity of an insured property and the objects or tangible things located at or in at the insured property. While the presence of SARS-Cov-2 might be discoverable at a distinct moment, that discovery applies only to that moment and does not insure that the SARS-Cov-2 was not present at a previous time and will not be present at a future time. In effect, SARS-Cov-2 and COVID-19 are pervasively present and ubiquitous at any time and in any place where real or personal property is located or where people are or can be.

**B.    SARS-Cov-2 and COVID-19 in the United States and Maryland**

13. As of August 21, 2020, the United States has suffered 5,551,793 reported cases of COVID-19 and 173,490 deaths resulting from the disease.

5

14.     As of August 21, Maryland has suffered 102,899 reported cases of COVID-19 and 3,536 confirmed deaths. Harford County has suffered 2,257 reported cases and 66 deaths, with neighboring Baltimore City suffering 13,804 cases and 433 deaths, Baltimore County 14,471 cases and 561 deaths, Cecil County 752 cases and 30 deaths, and Howard County 4,178 cases and 112 deaths.

15.     The neighboring states of Pennsylvania, Delaware, and New Jersey and their counties in proximity to Harford County have experienced similar, if not worse, statistics.

### C.     Maryland and Harford County's Response

16.     On March 5, 2020, Governor Hogan issued a Proclamation declaring a state of emergency and the existence of a catastrophic health emergency and an immediate danger to public safety stemming from SARS-Cov-2 and the COVID-19 it causes. This Proclamation was followed by a series of executive orders and proclamations from the Governor beginning on March 12, 2020, prohibiting large gatherings and requiring the cancellation of events and closing the use and occupancy of restaurants and bars and fitness centers to the general public. These executive proclamations and orders eventually lead to an order dated March 30, 2020 ordering, *inter alia*, that all persons in the State of Maryland "stay in their homes or places of residence ("Homes")" except "to conduct or participate in Essential Activities," as defined in the order, and prohibiting the gatherings of more than 10 persons. Order of the Governor of the State of Maryland Number 20-03-30-01.

6

17.     In a Proclamation of May 20, 2020, Governor Hogan made an executive finding that "COVID-19 is a highly infectious respiratory disease that spreads easily from person to person, **physically contaminates property by attaching to surfaces for prolonged periods of time**, and may result in serious illness of death."

18.     On March 18, 2020, Barry Glassman, the Harford County Executive, issued Executive Order 20-01 declaring a state of emergency due to the COVID-19 pandemic, placing Harford County in line with the orders and proclamations issued by Governor Hogan.

**D.     Bel Air Auto Auction and the effect of SARS-Cov-2 and COVID-19 and the governmental orders on its business and activities**

19.     Bel Air Auto Auction occupies and operated a vehicle auction facility on 185 acres located at 4805 Philadelphia Road, Belcamp Maryland and those locations specified in the Chubb Policy.  The overall main facility includes a 75,000 square foot, 10-lane auction building, a restaurant, an administrative office building, a state-of-the-art 50,000 square foot Vehicle Enhancement Center housing both mechanical and body shops, reconditioning bays, paint booths, and an imaging center, together with a separate building serving as a streamlined check-in facility for dealers and transporters.

20.     Bel Air Auto Auction processes over 100,000 vehicles per year through consignments from new and used car dealers, private business fleets, and fleets from public service and government agencies. Bel Air Auto Auction offers weekly auto auctions, including repossessed car auctions, government auctions, salvage

auctions, and wholesale auctions and provides a wide range of auto-related services, including floor planning, storage, transportation, internet sales, full vehicle reconditioning and certification, and sales of donated vehicles for charitable organizations. Bel Air Auto Auction would run ten lanes of vehicles at its auctions in which prospective buyers could view the cars during "in-lane bidding" as the auction progressed. Exhibit 2 to this Complaint are correct copies of photographs of an auction in progress from Bel Air Auto Auction's Facebook page.

21. The services Bel Air Auto Auction provides at its dealer vehicle auctions include Transportation (vehicle pickup and delivery), Automated Vehicle Check-in, Electronic Condition Reporting, Full Reconditioning and Repairs, Complete "Paperless Block" Sale Administration, Settlement & Reporting within 1 Day, All Lanes Simulcast, with online bidding from anywhere, secure storage, and Recovery and Remarketing Services.

22. As a direct and sole result of the presence of SARS-Cov-2 and its potential for causing COVID-19 and the State and Harford County governmental orders restricting and limiting the use and availability of the facility, Bel Air Auto Auction's business and operations have been and continues to be impaired, diminished, and decreased.

23. All in-person, in-lane, live bidding has been forced to cease. Sales of vehicle have been forced to be conducted by remote Simulcast only because Bel Air Auto Auction has lost the full, unfettered use of its facility.

8

24.     The food services and cafeteria have been forced to close, and various restrictions inside the facility have been imposed, such as requiring visitors to wear masks and installing signage and safe distancing reminders, COVID-screens, and plexiglass dividers.

25.     Safety procedures, such as enhanced screening of persons entering the facility in the form of temperature checks and submission of questionnaires, with access to and use of the facility further limited and restricted based on the results of these procedures.

26.     Vehicle sales have been drastically diminished and reduced, as have the related services provided by Bel Air Auto Auction at its facility due to the restrictions on its use imposed by SARS-Cov-2 and Covid-19 and the State and local governmental orders.

27.     Bel Air Auto Auction's operations and its ability to conduct its business have been impaired, and its income from its business and operations has been actually and substantially impaired and diminished as a result of SARS-Cov-2 and COVID-19 and the governmental orders issued in consequences and as a direct result of SARS-Cov-2 and COVID-19.

28.     Although the SARS-Cov-2 and Covid-19 and the State and local governmental orders have not resulted in a structural alteration or physical change to its premises, the SARS-Cov-2 and Covid-19 and the State and local governmental orders have caused direct physical loss or damage in the form of a loss of full use. This loss of full use has directly resulted in an actual and substantial impairment of operations, including loss of business income and an increase in business expense.

9

**E.     The Chubb Policy**

29.     Bel Air Auto Auction purchased from Chubb a policy of property and liability insurance that was issued on October 18, 2019 by Great Northern. The Policy, with a policy number 3601-95-62 BAL, was effective for the period from October 1, 2019 to October 1, 2020. Bel Air Auto Auction paid a premium of $96,797 for the property portion of the policy and $21,298 for the liability portion. Exhibit 1 at CHUBB 000009-10.

**F.     The basic provisions of the Chubb Policy.**

30.     The Chubb Policy contains a Schedule listing twelve distinct addresses comprising the insured premises and that together represent the Bel Air Auto Auction facility. Exhibit 1 at CHUBB 000013.

31.     The Chubb Policy also lists the specific coverages and amounts of coverage provided for each of the locations, including "business income with extra expense" for six of the listed premise." Exhibit 1 at CHUBB 000021-23.

32.     The property portion of the policy insures buildings and personal property against loss caused by or resulting from a peril not otherwise excluded by the Policy and at or within 1000 feet of the premises listed in the Declarations (i.e. the 12 listed locations). Exhibit 1 at CHUBB 000035. Stated differently, the property portion of the Chubb Policy insures against loss caused by any and every form or type of peril unless a specific identified and named peril is expressly excluded from coverage by some other portion of the Chubb Policy.

33. The Policy specifically states that the insurer will "**pay for direct physical loss *or* damage to**" building or personal property caused by or resulting from a peril not otherwise excluded. (*Emphasis added*). Exhibit 1 at CHUBB 000035.

34. The property portion of the policy does not define either" direct physical loss" or "damage."

35. From the perspective of the insured (Bel Air Auto Auction) both "direct physical loss" and "damage" mean and include either or both a structural change or alteration of the property or a loss of use of the property.

36. To the extent the words "direct physical loss or damage" can mean to a rational and reasonably prudent person both (a) a structural change or alteration of the property, but not a loss of its use, or (b) either or both a structural change or alteration of the property or a loss of use of the property, the term is ambiguous in its meaning in the policy.

37. Although the property portion of the Policy does not define damage, the liability portion of the policy does. The liability portion of the policy in the Definitions section defines "property damage" as meaning either physical injury to property, including loss of use, or loss of use without physical injury. As stated:

Property damage means:

- physical injury to tangible property, including resulting loss of use of that property, All such loss of use shall be deemed to occur at the time of the physical injury that caused it: or

- **loss of use of tangible property that is not physically injured.** All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

(*Emphasis added*). Exhibit 1 at CHUBB 000179.

38.     The property portion of the Policy does not contain any exclusion for physical loss or damage to property caused by or resulting from a virus, such as SARS-Cov-2, or any other pathogen or disease causing substance.

39.     The lack of an exclusion for viruses or other pathogens in the Chubb Policy was deliberate and intentional. On July 6, 2006, the Insurance Services Office (commonly referred to as the ISO) published for the benefit of the insurance industry a new endorsement for property insurance policies designated CP 01 40 07 06 – "Exclusion Of Loss Due To Virus Or Bacteria," which states that there is no coverage for loss or damage caused by or resulting from any "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." This endorsement was published in response to the SARS outbreak and was an implicit acknowledgement that all risk policies (like the Chubb Policy) covered viruses as direct physical loss or damage to tangible property, such that a need existed to specifically exclude viruses if an insurance company wanted to avoid liability for the loss of use property occasioned by the presence of a virus. A correct copy of the ISO virus exclusion form is attached as Exhibit 3.

40.     Most property insurance companies that want to exclude viruses from coverage use the ISO form CP 01 40 07 06 – "Exclusion Of Loss Due To Virus Or Bacteria." Although this form was available to Chubb and could have been added to

12

the Chubb Policy, Chubb did not do so and has not done so in other policies it has

issued. For example, the Chubb policy in *Café International Holding Company LLC*

*v. Chubb Limited and Westchester Surplus Lines Insurance Company*, Case No.

1;20-cv-21641-MGG (United States District Court for the Southern District of

Florida) does not contain a virus exclusion.

      41.    Although the Chubb Policy does not exclude viruses as a covered peril,

the Chubb Policy contains one use of the term "virus," albeit in a non-sensical form.

In the exclusion for coverage from a "pollutant" (whose definition does not include

viruses), the Chubb Policy contains an exception to the exclusion that says the

exclusion does not apply to:

    A.    …

    B.    any solid, liquid or gas used to suppress fire;

    C.     water;

    D.    … .

But the Policy then goes on to state that the exception to the exclusion does not

apply "to loss or damage involving:

-       viruses or pathogens; or

-       ammonia."

Exhibit 1 at CHUBB 000050. What this exception to the exception to the exclusion

means is beyond rational analysis or comprehension but demonstrates that Chubb

and Great Northern were aware of the words "virus or pathogens" when issuing the

policy.

13

**G.    The Business Interruption coverage in the Chubb Policy.**

42.    The Chubb Policy contains coverage for business interruption and extra expense resulting from direct physical loss or damage caused by a covered peril that occurs at or within 1,000 feet of the premises shown in the Declarations. The Chubb Policy requires the insurer to pay for actual loss of business income due to the actual impairment of operations and extra expense incurred due to the actual or potential impairment of operations caused by or resulting from direct physical loss or damage by a covered peril to property. As the Policy reads in pertinent part:

> Except as otherwise provided, direct physical loss or damage must:
>
> - be caused by or result from a covered peril; and
>
> - occur at, or within 1,000 feet of the premises, other than a dependent business premises, shown in the Declarations.
>
> We will pay for the actual:
>
> - business income loss you incur due to the actual impairment of your operations; and
>
> - extra expense you incur due to the actual or potential impairment of your operations,
>
> during the period of restoration, not to exceed the applicable Limit Of Insurance for Business Income With Extra Expense shown in the Declarations.
>
> This actual or potential impairment of operations must be caused by or result from direct physical loss or damage by a covered peril to property, unless otherwise stated.

Exhibit 1 at CHUBB 000064.

43.    The Chubb Policy does not require a total shut down of a business for business interruption coverage to exist but only an impairment of operations.

44.     To the extent direct physical loss or damage to property means and
includes loss of use, the presence of SARS-Cov-2 and Covid-19 and issuance of the
State and local governmental orders are perils not expressly excluded under the
provisions of the Policy and are for this reason covered by the insurance.

**H.     Additional business interruption coverages.**

45.     In addition to the general business interruption and extra expense
coverage, the Chubb Policy provides coverage for loss of business income for a
thirty-day period due to actual impairment of operations and extra expense
incurred directly caused by prohibition of access to the insured premises by a civil
authority that is the direct result of direct physical loss or damage to property away
from the insured premises provided the other property is within one mile of the
insured premises. Properties within one mile of the Bel Air Auto Auction premises
have suffered the same direct physical loss or damage as suffered by Bel Air Auto
Auction and this direct physical loss or damage has resulted in the governmental
orders by civil authorities prohibiting, restricting, or limiting access to Bel Air Auto
Auction's premises.

46.     As an alternative, the Policy provides coverage for loss of business
income for a thirty-day period due to actual impairment of operations and extra
expense incurred directly caused by prohibition of access to the insured premises by
a civil authority resulting from a covered peril that is ***not*** the result of direct
physical loss or damage to property away from the insured premises. Stated
differently, this coverage applies if the loss of use from SARS-Cov-2 and Covid-19
cannot be considered to have resulted in direct physical loss or damage to property.

15

**I.     Bel Air Auto Auction's claim for business interruption coverage**

47.    As a result and due to the impairment of its business and operations
and the extra expense it has incurred, Bel Air Auto Auction filed a claim for
business interruption and extra expense insurance coverage with Chubb in
accordance with the directions in the Chubb Policy.

48.    Chubb denied the claim for business interruption insurance coverage
on May 27, 2020. Exhibit 4 is a correct copy of the claim rejection letter of Chubb
and Great Northern.

**J.     Chubb's reasons for denying coverage.**

49.    The reasons given by Chubb for the rejection of Bel Air Auto Auction's
claim for coverage, as expressed in Exhibit 4,  are as follows:

a.     SARS-Cov-2 and COVID-19 have not resulted in direct physical
loss or damage to the building or personal property. Chubb has assumed that direct
physical loss or damage requires a structural change or other physical alteration to
the building or property for coverage to exist and that loss of use is not sufficient.
And the orders of the State and local jurisdiction requiring cessation or limiting all
non-essential activities were to slow the spread of COVID-19 and were not a cause
of direct physical loss or damage to the premises.

b.     The Civil Authority coverage in the business income portion of
the policy did not apply because (1) the civil authorities did not totally prohibit all
access to the premises given that employees were permitted access. Nor was there
direct physical loss or damage to premises away from but within one mile of the
insured premises because there was no evidence of an order from a civil authority

issuing due to structural or other alteration to any property away from the premises but within one mile, loss of use not constituting direct physical loss or damage.

       c.     The prohibition of access coverage of the business income portion of the policy did not apply because (1) there was no total prohibition of access by a civil authority since employees were permitted access, (2) access was not prohibited as a direct result of a peril not otherwise excluded in the Policy that occurred at or within 1,000 feet of the premises, does not apply to an area of more than 5,000 square feet, or only applies to the premises described in the declarations, the orders not having been issued because the virus was discovered within 1,000 feet of the premises nor having been limited to a geographic area of 5,000 feet or less or the premises shown in the Declarations.

       d.     The Acts or Decisions exclusion in the main policy applies and bars coverage for losses based on the acts on the acts or decisions of any person, group, organization, or governmental body, there being no ensuing loss or damage caused by or resulting from a peril not otherwise excluded.

Chubb reserved the right to assert reasons to deny coverage not set forth in the claim denial letter.

**K.    Bel Air Auto Auction's response to Chubb's claim denial.**

50.    Bel Air Auto Auction's response as to why coverage exists for business interruption and extra expense is as follows:

a.  (1)  The words "direct physical loss or damage" are not defined in the property portion of the policy. From the perspective of the insured (as opposed to the insurer), these words mean loss of use as well as structural alteration or change.

(2)  If the words "direct physical loss or damage" do not mean loss of use as well as structural alteration or change, the words are ambiguous, having two plausible meanings to a rational and reasonably prudent person. The ambiguity must be resolved in favor of the insured and against the insurer to provide coverage.

(3)  If the entire policy, both property and liability, is to be regarded as a whole, the definition of property damage in the liability portion, meaning loss of use whether or not accompanied by physical injury,  should control the meaning of physical loss or damage in the property portion to provide coverage.

(4)  Chubb could have included the ISO virus exclusion or some other exclusion for viruses if it intended to not cover loss of use occasioned by the presence of viruses. The lack of an express exclusion indicates Chubb's intention to cover physical loss or damage caused by viruses.

For these reasons, the loss of use resulting from SARS-Cov-2 and COVID-19 and the orders of the state and local governments is covered under the business interruption and extra expense portion of the policy.

18

b.     The Civil Authority coverage in the business income portion of the policy applies because a prohibition does not have to be a total, absolute, and complete prohibition but can be a prohibition that restricts or limits use. Hence, the civil authorities did not have to totally prohibit all access to the premises and could prohibit or restrict the number or types of persons who could have access. And there was direct physical loss or damage to premises away from but within one mile of the premises for the same reason there was direct physical loss or damage to the insured premises. Other properties within one mile lost use of the properties due to SARS-Cov-2 and COVID-19 and the civil authority orders.

c.     The prohibition of access coverage of the business income portion of the policy applied because (1) the total prohibition of access by a civil authority did not have to be a total, absolute, complete prohibit and could prohibit or limit the number or types of persons who could have access. And access was prohibited as a direct result of a peril not otherwise excluded in the Chubb Policy that has occurred at or within 1,000 feet of the premises, namely the presence of SARS-Cov-2 and COVID-19 on surfaces, in the air, or in persons present at the premises.

d.     The Acts or Decisions exclusion applies only to the main coverage portion of the policy, not the business interruption and extra expense portion, as is demonstrated by the express Civil Authority coverage in the business interruption portion. The Acts and Decisions exclusion and the Civil Authority Coverage are inconsistent and irreconcilable.  And since SARS-Cov-2 and COVID-19

19

constitutes an "ensuing loss" that continued to occur after the initial act or decision, the ensuing loss exception to the exclusion applies to restore coverage.

As with Chubb, Bel Air Auto Auction reserves the right to assert additional reasons why the denial of coverage is improper and why coverage exists.

**L.    The reasons for a declaratory judgment.**

51.    Bel Air Auto Auction and Chubb, as persons with an interest in a written contract whose rights, status, or other legal relations are affected by that contract, may have determined any question of construction or validity arising under the contract, or a declaration of rights, status, or other legal relations under it, as authorized under Md. Code Ann., Cts. & Jud. Proc. § 3-406.

52.    The policy is a contract that the court may construe before or after a breach under Md. Code Ann., Cts. & Jud. Proc. § 3-407.

53.    A declaratory judgment will serve to terminate the uncertainty or controversy giving rise to the proceeding because  (a) an actual controversy exists between contending parties; (b) antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; and (c) a party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it, as specified in Md. Code Ann., Cts. & Jud. Proc. § 3-409.

54.    The Court should order a speedy hearing of this action and direct that the matter be advanced on the calendar, as provided in Md. Code Ann., Cts. & Jud. Proc. § 3-409 (e).

WHEREFORE, Plaintiff, Bel Air Auto Auction, requests the Court, as provided by Md. Code Ann., Cts. & Jud. Proc. § 3-409 (e) to order a speedy hearing of this action and direct that the matter be advanced on the calendar and to issue a declaratory judgement that the:

a.      business interruption and extra expense coverage exists under the Chubb Policy for Bel Air Auto Auction's losses due to the loss of use of the insured premises caused by SARS-Cov-2 and Covid-19 and the State and local governmental orders;

b.      Civil Authority coverage exists under the business interruption and extra expense portion of the Chubb Policy;

c.      prohibition of access coverage exists under the business interruption and extra expense portion of the Chubb Policy; and

d.      Acts and Decisions exclusion in the Chubb Policy does not apply to the business interruption and extra expense portion of the Chubb Policy and does not apply because SARS-Cov-2 and Covid-19 and the State and local governmental orders are ensuing causes of loss.

*/s/ Lawrence J. Gebhardt*

Lawrence J. Gebhardt
CPF No. 7212010082
Gregory L. Arbogast
CPF No. 1012140026
George B. Cunningham
CPF No. 1712130121
Gebhardt & Smith LLP
One South Street, Suite 2200
Baltimore, Maryland  21202
(410) 385-5100
Attorneys for Plaintiff,
Bel Air Auto Auction, Inc.

21

# EXHIBIT 1