**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

BEL AIR AUTO AUCTION, INC.          *

     Plaintiff,                          *

v.                                  *          Civil Action No. RDB-20-2892

GREAT NORTHERN INSURANCE            *
COMPANY,
                                      *

     Defendant.                         *

*     *     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM OPINION

In August of 2020, Plaintiff Bel Air Auto Auction, Inc. ("Bel Air" or "Plaintiff") filed suit against Defendant Great Northern Insurance Company[1] ("Great Northern" or "Defendant"), seeking a declaratory judgment that coverage exists under the business interruption provisions in a property insurance policy issued by Great Northern to Bel Air. (ECF No. 1-2.)  The now operative Amended Complaint specifically alleges that Bel Air's policy with Great Northern provides coverage for losses caused as a direct and sole result of the Pandemic. (ECF No. 4.)  It is alleged that the presence of SARS-Cov-2 and its potential for causing COVID-19, as well as the State of Maryland and Harford County's governmental orders have impaired, diminished, and decreased Bel Air's business and operations. (*Id.* ¶ 22.) The suit was originally filed in the Circuit Court for Harford County, Maryland and was removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 by Defendant Great Northern on October 7, 2020. (ECF No. 1.)

---

[1] Plaintiff originally sued both Great Northern and its parent company, Chubb Limited.  Chubb Limited was voluntarily dismissed from the suit prior to the removal of the case to this Court. (ECF No. 1-7.)

On January 7, 2021, Plaintiff Bel Air filed a Motion for Summary Judgment (ECF No. 18) in which it asserts that there are no genuine facts in dispute and that the only issues left to resolve are issues of Maryland contract law as applied to insurance policies. (*See* ECF No. 18-9 at 1.) That same day, the Plaintiff also filed a Motion to Certify Questions of Law to the Maryland Court of Appeals (ECF No. 19). That motion notes that Maryland courts have not directly addressed those questions which remain in dispute and asserts that available Maryland law is presently both insufficient and unsettled in addressing such legal issues in the context of the COVID-19 Pandemic. (ECF No. 19 ¶ 6.) On February 17, 2021, Defendant Great Northern filed a Motion for Judgment on the Pleadings (ECF No. 26). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons that follow, the Plaintiff Bel Air's Motion for Summary Judgment (ECF No. 18) and Motion for Other Relief to Certify Questions of Law to the Maryland Court of Appeals (ECF No. 19) are DENIED. The Defendant Great Northern's Motion for Judgment on the Pleadings (ECF No. 26) is GRANTED.

## BACKGROUND

Plaintiff Bel Air is a Maryland corporation with its headquarters in Harford County, Maryland. (ECF No. 4 ¶ 2.) It occupies and operates a vehicle auction facility located at 4805 Philadelphia Road, Belcamp, Maryland, as well as other locations. (ECF No. 4 ¶ 19.) Bel Air alleges that the company typically processes over 100,000 vehicles per year through consignments from new and used car dealers, private business fleets, and fleets from public service and government agencies. (*Id.* ¶ 20.) Bel Air offers weekly auto auctions, including repossessed car auctions, government auctions, salvage auctions, and wholesale auctions and

provides a wide range of auto-related services, including floor planning, storage, transportation, internet sales, full vehicle reconditioning and certification, and sales of donated vehicles for charitable organizations. (*Id.*) Before the COVID-19 Pandemic, Bel Air ran ten "lanes" of vehicles at its auctions in which prospective buyers could view the cars during "in-lane bidding." (*Id.* ¶ 20.) Bel Air's services also included "online bidding from anywhere." (*Id.* ¶ 21.)

Bel Air purchased from the Chubb Group of Insurance a policy for property and liability insurance issued on October 18, 2019 by Defendant Great Northern, a corporation organized under the laws of Indiana with its principal place of business in Whitehouse Station, New Jersey. (*Id.* ¶ 29; ECF No. 1 ¶ 3.) The purchased policy, with policy number 3601-95-62 BAL (the "Policy"), was effective for the period from October 1, 2019 to October 1, 2020. (*Id.*; *see* Ex. 1, ECF No. 18-1.)

On March 5, 2020, Maryland Governor Lawrence Hogan issued a proclamation which declared a state of emergency due to the spread of SARS-Cov-2, the virus causing the COVID-19 disease. (ECF No. 4 ¶ 16.) The Governor issued several other executive orders and proclamations throughout March of 2020 prohibiting large gatherings, canceling events, and closing the use and occupancy of restaurants, bars, and fitness centers to the general public. (*Id.*) However, Interpretive Guidance issued on March 23, 2020 made clear that "[a]uto and truck dealerships" were permitted to remain open as essential businesses. *See* Interpretive Guidance COVID 19-05 (Mar. 23, 2020). [2] According to the Defendant, Bel Air's website

---

[2] When considering a Rule 12(c) motion for judgment on the pleadings, a court may take judicial notice of a public document, without converting the motion into one for summary judgment. *See, e.g.*, *Armbruster Products, Inc. v. Wilson*, 35 F.3d 555 (Table), 1994 WL 489983, at *2 (4th Cir. 1994) ("The consideration of judicially noticed facts does not transform a motion for judgment on the pleadings into a motion for summary judgment."); *Ancient Coin Collection Guild v. U.S. Customs*

stated that, consistent with that Guidance, it would remain open throughout the Pandemic. (*See* ECF No. 27 at 7-8 (citing Richeimer Decl. ¶ 6, ECF No. 27-1).)  On March 30, 2020, Governor Hogan issued a "stay at home" order, which ordered all persons in the State of Maryland to "stay in their homes or places of residence" except "to conduct or participate in Essential Activities" (defined in the order), and closing "Non-Essential Businesses" except for "Minimal Operations," which included allowing the presence of staff and owners to perform essential administrative functions.  *See* Order of the Governor of the State of Maryland, Number 20-03-30-01 (Mar. 30, 2020).  On March 18, 2020, Barry Glassman, the Harford County Executive, issued Executive Order 20-01 declaring a state of emergency due to the COVID-19 Pandemic and placing Harford County in line with the orders and proclamations issued by Governor Hogan.  *See* Executive Order 20-01 (Mar. 18, 2020).

Nevertheless, according to Bel Air, as a direct and sole result of the presence of SARS-Cov-2 and its potential for causing COVID-19 and the orders of both Governor Hogan and Executive Glassman, Bel Air's business and operations were, and continue to be, impaired, diminished, and decreased.  (*Id.* ¶ 22.)  "All in-person, in-lane, live bidding has been forced to cease," and the company has had to conduct sales by "remote Simulcast" because it "has lost the full, unfettered use of its facility."  (*Id.* ¶ 23.)  Bel Air alleges that the food services it previously offered have been forced to close, and various restrictions inside the facility have been imposed, such as requiring visitors to wear masks and installing signage and safe distancing reminders, COVID-screens, and plexiglass dividers.  (*Id.* ¶ 25.)  As the Plaintiff

---

*and Border Protection*, 801 F. Supp. 2d 383, 410 (D. Md. 2011); *Lefkoe v. Jos. A. Bank Clothiers*, No. WMN-06-1892, 2008 WL 7275126, at *3-4 (D. Md. May 13, 2008).

explains, "[a]lthough the SARS-Cov-2 and Covid-19 and the State and local governmental orders have not resulted in a structural alteration or physical change to its premises," they have "caused direct physical loss or damage in the form of a loss of full use." (*Id.* ¶ 28.)  The Plaintiff alleges that such loss of full use "has directly resulted in an actual and substantial impairment of operations, including loss of business income and an increase in business expense." (*Id.*)  Bel Air asserts that such loss is recoverable under its policy with Great Northern.

Bel Air seeks coverage for its losses under various sections of the Policy.  The "Premises Coverages" section of the Policy states that the insurer will "pay for direct physical loss or damage to" building or personal property "caused by or resulting from a peril not otherwise excluded." (*Id.* ¶ 33; *see also* Ex. 1 at 000035, ECF No. 18-1.)  The Policy does not define "direct physical loss" or "damage." The Policy does, however, define "property damage" as:

- physical injury to tangible property, including resulting loss or use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

(Ex. 1 at 000179, ECF No. 18-1.)

The Policy also contains business interruption coverage predicated upon on the loss of use of the subject property.  For example, the "Business Income with Extra Expense" section provides coverage for "business income loss" incurred "due to the actual impairment of [ ] operations" and "extra expense" incurred "due to the actual or potential impairment of [ ]

operations" incurred "during the period of restoration." (*Id.* at 000064.)  However, for this section to apply, there must be "direct physical loss or damage" that must "be caused by or result from a covered peril," and must have "occur[ed] at, or within 1,000 feet of, the premises, other than a dependent business premises, shown the in Declarations." (*Id.*)  "Covered peril" is defined as "peril covered by the Form(s) shown in the Property Insurance Schedule Forms . . . applicable to the lost or damaged property." (*Id.* at 000115.)  The "period of restoration" is defined as the period "immediately after the time of direct physical loss or damage by a covered peril to property" and continuing until operations are restored with reasonable speed, including the time required to "repair and replace the property." (*Id.* at 000124.)

The "Civil Authority" section of the Policy also provides coverage for business interruption, but specifically covers such loss incurred "due to the actual impairment" of operations and "extra expense" incurred, "directly caused by the prohibition of access to: your premises; or a dependent business premises, by a civil authority." (*Id.* at 000067.)  "This prohibition of access by a civil authority," the Policy states, "must be the direct result of direct physical loss or damage to property away from such premises or such dependent business premises by a covered peril," and applies if the property is within one mile or another pre-identified distance from the premises or the dependent business premises, "whichever is greater." (*Id.*)

Finally, the Policy includes certain exclusions.  The "Acts Or Decisions" exclusion applicable to the Business Income and Extra Expense coverage and the Civil Authority coverage provides that the insurance "does not apply to loss or damage caused by or resulting

from acts or decisions, including the failure to act or decide, of any person, group, organization or government body." (*Id.* at 000088.) It continues, providing that the Acts Or Decisions exclusion "does not apply to ensuing loss or damage caused by or resulting from a peril not otherwise excluded." (*Id.*) The Policy does not include a specific, explicit exclusion for damage caused by a virus. On July 6, 2006, the Insurance Services Office[3] (commonly referred to as the "ISO") published for the benefit of the insurance industry a new endorsement for property insurance policies designated CP 01 40 07 06 – "Exclusion Of Loss Due To Virus Or Bacteria," which states that there is no coverage for loss or damage caused by or resulting from any "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Answer ¶ 39, ECF No. 14.) An exclusion of this nature is not included in the subject Policy in this case. (*See* ECF No. 18-1.)

As a result of purported impairment of its business and operations and extra expenses allegedly incurred due to the spread of SARS-Cov-2, Bel Air filed a claim for business interruption and extra expense insurance coverage with Defendant Great Northern. (Answer ¶ 47, ECF No. 14.) Great Northern denied the claim for business interruption insurance coverage on May 27, 2020, and provided several reasons for this denial. (*See* Ex. 4, ECF No. 18-4.) The Defendant asserted that SARS-Cov-2 and COVID-19 have not resulted in direct physical loss or damage to the building or personal property of the Plaintiff and that the Civil Authority coverage income portion of the policy did not apply because (1) the civil authorities did not totally prohibit all access to the premises given that employees were permitted access

---

[3] Insurance Services Office, Inc. is an insurance advisory organization that provides statistical and actuarial information to businesses. The company provides statistical, actuarial, underwriting, and claims information, as well as form policy language clients may adopt and use in their policies. *See* About ISO, https://www.verisk.com/insurance/brands/iso/ (last visited April 14, 2021).

the property, and (2) there was no physical loss or damage to a premises away from but within one mile of the insured premises because there was no evidence of an order from a civil authority issued due to structural or other alteration to any such property.  (*Id.*)  The Defendant also asserted that the Acts Or Decision exclusion in the Policy would apply and bar coverage for losses based on the acts or decision of any person, group, organization, or government body, there being no ensuing loss or damage caused by or resulting from a peril not otherwise excluded.  (*Id.*)

Bel Air filed the presently pending suit in October of 2020 seeking a declaratory judgment that coverage exists under the business interruption provisions in the Policy.  (ECF No. 1-2.)  The suit was originally filed in the Circuit Court for Harford County, Maryland and was removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 by Defendant Great Northern on October 7, 2020.  (ECF No. 1.)  The now operative Amended Complaint seeks an order stating that business interruption and extra expense coverage exists under the Policy for Bel Air's losses due to the loss of use of the insured premises caused by the SARS-Cov-2 virus and COVID-19 disease and the State and local government orders, and that the Acts Or Decisions exclusion does not apply.  (ECF No. 4 at p. 20-21.)

On January 7, 2021, Plaintiff Bel Air filed a Motion for Summary Judgment (ECF No. 18) as well as a Motion for Other Relief to Certify Questions of Law to the Maryland Court of Appeals (ECF No. 19).  In its Motion for Summary Judgment, Bel Air asserts that summary judgment in its favor is appropriate because the Policy provides coverage for its losses arising from the COVID-19 Pandemic's contamination of its facility and governmental orders issued in response to the Pandemic.  (ECF No. 18-9 at 1.)  The Plaintiff contends that the material

facts in this case are not in dispute, and that the only issues in dispute are legal issues of Maryland contract law as applied to insurance policies. (*Id.*) According to the Plaintiff, three issues of law are in dispute:

1. Whether coverage under the Business Income with Extra Expense provision providing coverage for "direct physical loss or damage" requires a structural change to or physical alteration of the insured premises, or whether a loss of use of the insured premises due to contamination suffices for coverage to exist;

2. Whether all access has to be completely prohibited for the Civil Authority section to apply; and

3. Whether the Acts Or Decisions exclusion has any application to the question of coverage in the Business Income With Extra Expense portion of the Policy.

(*Id.* at 1-2.) The Plaintiff moved for certification to the Maryland Court of Appeals on these legal questions under Md. Code Ann., Cts. & Jud. Proc. § 12-603, and noted that it understood the Court may defer ruling on its Motion for Summary Judgment if it granted such motion for certification. (*Id.* at 2 n.1.)

On February 17, 2021, the Defendant Great Northern filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) (ECF No. 26), in which it argues that the Plaintiff's Motion for Summary Judgment should be denied and requests that this Court award judgment in its favor because the presence or absence of a virus is irrelevant under the clear language of the Policy. (*See* ECF No. 27.) According to the Defendant, more than 100 courts have acknowledged the distinction between actual, physical loss or damage and the partial loss of use and diminished business income associated with the COVID-19 Pandemic and resulting

"stay at home" orders.  (*Id.* at 1.)  The Defendant contends that applying basic rules of statutory construction, these courts have held that the terms "direct" and "physical" modify both "loss" and "damage" and ensure that policies are limited to tangible, physical losses to property, or, at the very least, permanent dispossession of property rendered unfit or uninhabitable by physical forces.  (*Id.*)  Such decisions, the Defendant asserts, "fully comport" with Maryland law, and, therefore, no certification is necessary.

## STANDARD OF REVIEW

### A.  Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id.* at 249.  In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party.  *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).

In the specific context of a "claim for breach of an insurance policy, 'the insured bears

the burden of proving every fact essential to his or her right to recovery, ordinarily by a preponderance of the evidence.'" *See Jowite Ltd. P'ship v. Federal Ins. Co.*, No. DLB-18-2413, 2020 WL 4748544, at *5 (D. Md. Aug. 17, 2020) (quoting *Gen. Ins. Co. v. Walter E. Campbell Co.*, 214 F. Supp. 3d 578, 597 (D. Md. 2017) (citing *N. Am. Acc. Ins. Co. v. Plummer*, 176 A. 466, 469 (Md. 1935), *aff'd sub nom. Gen Ins. Co. v. United States Fire Ins. Co.*, 886 F.3d 346 (4th Cir. 2018), as amended (Mar. 28, 2018))). "If the insured meets its burden and the 'insurer [has] relie[d] upon a policy exclusion to deny coverage, the insurer bears the burden of proving that the exclusion applies.'" *Id.* (quoting *Ellicott City Cable, LLC v. Axis Ins. Co.*, 196 F. Supp. 3d 577, 584 (D. Md. 2016) (citing *Finci v. Am. Cas. Co.*, 593 A.2d 1069, 1087 (Md. 1991))).

## B. Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure authorizes a party to move for judgment on the pleadings any time after the pleadings are closed, as long as it is early enough not to delay trial.[4] *See* Fed. R. Civ. P. 12(c). The legal standard governing such a motion is the same as a motion to dismiss under Rule 12(b)(6). *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Booker v. Peterson Cos.*, 412 F. App'x 615, 616 (4th Cir. Feb.25, 2011); *Economides v. Gay*, 155 F. Supp. 2d 485, 488 (D. Md. 2001). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the

---

[4] Defendant filed an Answer (ECF No. 14) on November 4, 2020, prior to filing the Motion for Judgment on the Pleadings (ECF No. 26) on February 17, 2021. Trial has yet to be set in this matter.

sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

In determining whether dismissal is appropriate, this Court assumes as true all well-pleaded facts in the plaintiff's complaint but does not accept the plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mort. & Loan Invi, LLC*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679.

## ANALYSIS

As the basis of this Court's jurisdiction lies in diversity of citizenship, under 28 U.S.C. § 1332(a), Maryland law applies. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Under Maryland law, courts follow the general rules of contract construction in the interpretation of an insurance contract. *See Cheney-Bell Nat'l Life Ins. Co.*, 556 A.2d 1135, 1138 (Md. 1998); *Pacific Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 488 (Md. 1985). Additionally, "Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer." *Id.* As such, principles of contract law govern the property insurance policy at issue, and the rights and obligations of the parties are

determined by the terms of that contract. *Columbia Town Ctr. Title Co. v. 100 Inv. Ltd. P'ship.*, 36 A.3d 985, 1005 (Md. Ct. Spec. App. 2012). "[I]f no ambiguity in the terms of the insurance contract exists, a court has no alternative but to enforce those terms." *Dutta v. State Farm Ins. Co.*, 769 A.2d 948, 957 (Md. 2001) (citing *Kendall v. Nationwide Ins. Co.*, 702 A.2d 767, 773 (Md. 1997)).

When interpreting an insurance policy's terms, this Court is instructed to interpret such policy "as a whole, according words their usual, everyday sense, giving force to the intent of the parties, preventing absurd results, and effectuating clear language." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 495 (4th Cir. 1998). The test for that "usual, everyday sense," is "what meaning a reasonably prudent layperson would attach to the term." *See Pacific Indem.*, 488 A.2d at 488. Words in a contract are only considered ambiguous if "they reasonably can be understood to have more than one meaning." *Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.*, 963 A.2d 253, 260 (Md. Ct. Spec. App. 2009) (internal citation omitted). This Court should give effect to each clause "so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Muhammad v. Prince George's Cty. Bd. of Educ.*, 228 A.3d 1170, 1179 (Md. Ct. Spec. App. 2020) (internal citation omitted), *cert. denied*, 238 A.3d 273 (Md. 2020).

Where a plaintiff asserts entitlement to coverage under an insurance policy, that party bears the burden of proving coverage under the policy. *See Prop. & Cas. Ins. Guar. Corp. v. Beebe-Lee*, 66 A.3d 615, 624 (Md. 2013). Therefore, to prevail on its claim for coverage in this case, Plaintiff Bel Air has the burden to show a covered loss under the terms of the Policy. As explained above, the Plaintiff seeks coverage under the Premises Coverage (Ex. 1 at

000035, ECF No. 18-1), Business Income with Extra Expense (*id.* at 000064), and the Civil Authority subcoverage (*id.* at 000067) portions of the Policy. Each of these sections requires that there be a "direct physical loss or damage" to property—either to the covered property itself, or surrounding property identified by the Civil Authority provision. Bel Air claims that "direct physical loss or damage" includes not only detrimental and harmful structural changes or alterations to a property, but also includes "a detrimental or harmful loss of *use* of that tangible property." (ECF No. 18-9 at 16 (emphasis added).) Bel Air seeks certification of a question related to this issue of state law to the Court of Appeals of Maryland. (ECF No. 19 ¶ 3.)

Although Maryland courts have not directly opined on the meaning of "direct physical loss or damage" to property in the context of a commercial property insurance policy, this Court is not required to certify questions of law to the state court as the Plaintiff requests because a straightforward application of Maryland contract law detailed above can resolve all remaining issues in this case. This Court may certify a question of law to the Court of Appeals of Maryland "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling [Maryland] appellate decision, constitutional provision, or statute . . . ." *See* Maryland Uniform Certification of Questions of Law Act, Md. Code Ann., Cts. & Jud. Proc. § 12-603. However, as this Court noted in *Marshall v. James B. Nutter & Co.*, "it is well established that the decision to certify a question to the Court of Appeals of Maryland is not obligatory and 'rests in the sound discretion of the federal court.'" No. RDB-10-3596, 2013 WL 3353475, at *7 (D. Md. July 2, 2013), *aff'd*, 758 F.3d 537 (4th Cir. 2014) (quoting *Hafford v. Equity One, Inc.*, No. AW-07-1633, 2008 WL 906015, at *4 (D. Md.

Mar. 31, 2008) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974))); *see also Boyster v. Comm'r of Internal Revenue Serv.*, 668 F.2d 1382, 1385 (4th Cir. 1981) ("Certainly we have discretion as to whether to employ the Maryland certification procedure.").

In exercising such discretion, federal courts may decide not to certify a question to a state court where the federal court can reach a "reasoned and principled conclusion." *Hafford*, 2008 WL 906015, at *4. As the U.S. Court of Appeals for the Fourth Circuit instructs, "[o]nly if the available state law is clearly insufficient should the court certify the issue to the state court." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994) (citing *Smith v. FCX, Inc.*, 744 F.2d 1378, 1379 (4th Cir. 1984), *cert. denied*, 471 U.S. 1103 (1985)). "When this guidance is available the federal court should decide the case before it rather than staying and prolonging the proceedings." *Arrington v. Coleen, Inc.*, No. AMD-00-191, AMD-00-421, and AMD-00-1374, 2001 WL 34117735, at *5 (D. Md. Mar. 29, 2001). When the Court is satisfied that it is "able to anticipate the way in which the Maryland Court of Appeals would rule," certification is not necessary. *See Bethany Boardwalk Grp. LLC v. Everest Security Ins. Co.*, -- F. Supp. 3d --, 2020 WL 1063060, at *11 n.6 (D. Md. Mar. 5, 2020). As the following discussion will explain, under the straightforward application of Maryland contract law as applied to insurance policies, Plaintiff Bel Air does not have a claim to coverage under the plain language of its commercial property insurance policy with Defendant Great Northern, and no certification is necessary. There is sufficient guidance from Maryland state courts, this Court, and other federal district courts applying the same basic principles of contract law to almost identical insurance policy provisions to guide this Court's analysis.[5]

---

[5] Other federal district court addressing almost identical questions of state law under commercial property insurance

### A. "Direct physical loss or damage" to property does not include loss of use unrelated to tangible, physical damage.

Applying basic principles of Maryland contract law, this Court has interpreted the words "physical" and "damage" in the context of a commercial general liability insurance policy. *See M Consulting & Export, LLC v. Travelers Cas. Ins. Co. of America*, 2 F. Supp. 3d 730, 735-737 (D. Md. 2014). In that case, the policy provided coverage for property damage, defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured." *Id.* at 735-36. The plaintiff argued that conversion of the property, a form of a "loss of use" claim, qualified as "physical loss" to tangible property. *Id.* at 736. This Court found such claim was unsupported by any applicable case law and stated that the term "physical damage" was "in no way ambiguous." *Id.* Looking to the definitions of "physical" and "physical harm" as provided in the Merriam-Webster Online Dictionary and Black's Law Dictionary, this Court held that "inclusion of the term 'physical' clearly indicates that the damage must *affect the good itself*, rather than the Plaintiff's *use* of the good." *Id.* (emphasis added) (citing Merriam-Webster Online Dictionary (defining "physical" as "having a material existence," "perceptible especially through the senses and subject to the laws of nature," or "of or relating to material things") and Black's Law Dictionary (8th ed.) (defining "physical harm" as "[a]ny physical impairment of land, chattels, or the human body.")).

---

policies have come to decisions without certification of such questions of law to state courts. Some courts have specifically denied motions for certification like the one filed in this case by Plaintiff Bel Air. *See Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, No. 1:20-CV-275-JB-B, 2020 WL 6163142, at *5 (S.D. Ala. Oct. 21, 2020) ("Indeed, the Court could find no Alabama decision addressing whether a temporary inability to use one's property for its intended purpose constituted a 'direct physical loss of property.' However, there is sufficient authority to guide the Court's decision on the meaning of that phrase.") *See also Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.*, No. 1:20-CV-2939-TWT, 2020 WL 5938755, at *7 (N.D. Ga. Oct. 6, 2020); *Drama Camp Productions, Inc. v. Mt. Hawley Ins. Co.*, No. 1:20-CV-266-JB-MU, 2020 WL 8018579, at *4 (S.D. Ala. Dec. 30, 2020).

The Maryland Court of Appeals has in one context found a loss of use to constitute a form of "damage to property" in a case applying the Maryland uninsured motorist statute. *See Berry v. Queen*, 233 A.3d 42 (Md. 2020). The Court held that the statute, which mandated coverage for "damage to property," required automobile insurers to pay for a car rental while an insured's physically damaged vehicle was being repaired. *Id.* at 48. The court found that the ordinary meaning of "damage" necessarily included a "loss of something" and that "loss of property" could include circumstances in which "the lawful owner is deprived of the ability to apply the object in a manner he or she desires—i.e., a loss of use." *Id.* at 51. However, the context of *Berry* still involved physical harm or injury to property. As the Defendant aptly notes, "[t]he Court of Appeals was not asked to hold, nor did it hold . . . that a policyholder could make an uninsured motorist claim for rental car coverage every time it suffered a 'loss of use' of a vehicle untethered to physical damage to that vehicle." (ECF No. 30 at 9.)

Further, the language of the uninsured motorist statute did not include the modifier "physical." Numerous courts have found that the phrase "direct physical loss or damage" to property, commonly used in property insurance policies, is unambiguous and have specifically held that the modifier "direct physical" applies to both "loss" and "damage." *See, e.g., AFLAC, Inc. v. Chubb & Sons, Inc.*, 581 S.E.2d 317, 319 (Ga. Ct. App. 2003); *Ward Gen. Ins. Servs., Inc. v. Emp'rs Fire Ins. Co.*, 7 Cal. Rptr. 3d 844, 849 (Cal. Ct. App. 2003); *Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287-88 (S.D.N.Y. 2005). Accordingly, such courts have held that the phrase "direct physical loss or damage" to property expressly limits coverage to tangible, physical changes to insured property. *Id.* For example, in *AFLAC, Inc.*, the court was unable to find any state precedent directly "construing the term of insurance 'direct physical loss or

damage,'" but found that "the common meaning of the words and the policies as a whole, indicate that it contemplates an actual change in insured property . . . causing it to become unsatisfactory for future use or requiring that repairs be made to make it so." 581 S.E.2d at 319 (citing *Trinity Indus. v. Ins. Co. of North America*, 916 F.2d 267, 271 (5th Cir. 1990), *Wolstein v. Yorkshire Ins. Co.*, 985 P.2d 400 (Wash. Ct. App. 1999), and *North American Shipbldg., Inc. v. Southern Marine & Aviation Underwriting, Inc.*, 930 S.W.2d 829, 833 (Tex. App. 1996)).

Numerous courts have had the opportunity to directly address the meaning of identical "direct physical loss or damage" language in commercial property insurance policies in the context of a plaintiff claiming loss of use due to the COVID-19 Pandemic and stay at home orders. Those courts have overwhelming held that the phrase requires tangible, physical losses to property, or, at the very least, permanent dispossession of the property rendered unfit or uninhabitable by physical forces, rejecting plaintiffs' claims for coverage in the context of COVID-19 through the application of the same basic principles of contract law that this Court must apply under Maryland law. *See, e.g.*, *Bluegrass Oral Health Ctr. v. Cincinnati Ins. Co.*, No. 1:20-CV-00120-GNS, 2021 WL 1069038, at *4 (W.D. Ky. Mar. 18, 2021) (finding that "the great weight of decisions recently considering" the issue of the meaning of "direct physical loss or damage" in "the midst of the current pandemic have reached the same conclusion" that the phrase requires some physical damage, rather than mere loss of use).[6]

---

[6] The court in *Bluegrass Oral Health* cited to numerous opinions of other courts. *See  10E, LLC v. Travelers Indemnity Co. of Connecticut*, 483 F. Supp. 3d 828, 836 (C.D. Cal. 2020); *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *5 (W.D. Tex. Aug. 13, 2020); *Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020 CA 002424 B, 2020 WL 4589206, at *2 (D.C. Super. Ct. Aug. 6, 2020); *Turek Enters., Inc. v. State Farm Mut. Auto. Ins. Co.*, 484 F. Supp. 3d 492, 500 (E.D. Mich. 2020) (citing Merriam Webster's definition of "loss" to reject the interpretation of loss as, *inter alia*, loss of use); *Kirsch  v. Aspen Am. Ins. Co.*, No. 20-11930, 2020 WL 7338570, at *5 (E.D. Mich. Dec. 14, 2020) (same); *Fam. Tacos, LLC v. Auto Owners Ins. Co.*, No. 5:20-CV-01922, 2021 WL 615307, at *5 (N.D. Ohio Feb. 17, 2021) (same); *Ceres Enters., LLC v. Travelers Ins. Co.*, No. 1:20-CV-1925, 2021 WL 634982, at *5 (N.D. Ohio Feb. 18, 2021) (same); *Dakota Girls, LLC v. Phila. Indem. Ins. Co.*, No. 2:20-CV-2035, 2021 WL 858489, at *6 (S.D. Ohio Mar. 8, 2021) (same).

In *1 S.A.N.T. Inc. v. Berkshire Hathaway, Inc.*, the plaintiff, an operator of a restaurant and tavern business, claimed that it had incurred and was continuing to incur substantial loss of business income and other expenses due to state orders closing all "non-life sustaining businesses," which included 1 S.A.N.T., a restaurant property covered by a property insurance policy.  -- F. Supp. 3d --, 2021 WL 147139, at *1 (W.D. Pa. Jan. 15, 2021).  The plaintiff was denied coverage under that policy because it did not sustain "direct physical loss or damage to a Covered Property."  *Id.*  The plaintiff filed suit against its insurer, contending the policy should cover its claim because it could not use the property for its intended purpose during the Pandemic and, therefore, had suffered "direct physical loss or damage" to such property. *Id.*  The court held that the plain meaning of the phrase "direct physical loss or damage" to property could not support the plaintiff's claim.  *Id.* at *5.  As the court explained, the words "'loss' and 'damage' do not stand alone but are modified by the terms 'direct physical.'"  *Id.* Just as under Maryland law, the state law at issue required the court to "give effect to all the terms in the context of the Policy language."  *Id.*  According to the court, the presence of both "direct" and "physical" meant "there [was] no reasonable question that the Policy language presupposes that the request for coverage stems from an actual impact to the property's structure, rather than the diminution of its economic value because of governmental actions that do not affect the structure."  *Id.*  The court granted the defendant-insurer's motion to dismiss in this context of a restaurant property where the plaintiff, unlike Bel Air, did not concede that customers still had access to the premises.

Similarly, in *Chief of Staff, LLC v. Hiscox Ins. Co. Inc.*, the court granted a motion to dismiss in a case where the plaintiff, a hospitality support agency, sought to recover its loss of

income caused by a governor's COVID-19-related orders under a commercial property insurance policy issued by the defendant pursuant to the "Business Income," "Excess Expense," and "Civil Authority" provisions of the applicable policy.  No. 20-C-3169, 2021 WL 1208969, at *1-*2 (N.D. Ill. Mar. 31, 2021).  As in the case at hand, the policy at issue limited the applicability of "Business Income" and "Excess Expense" provisions to the "direct physical loss of or damage to property at the described premises."  *Id.* at *2.  The court, as others, turned to the plain meaning of the words in the policy and held that "'physical loss' refers to a deprivation caused by a tangible or concrete change in or to the thing that is lost.'" *Id.*  The plaintiff's complaint alleged loss of the use of its property due to the governor's closure orders, but without any allegation of a tangible or concrete change in or to the property, the court held that the plaintiff had failed to state a claim for relief under either the business income or excess expense provisions.  *Id.*

The Civil Authority provision in that case included language almost identical to the one at hand, and the court held that such provision failed to provide coverage for the same reasons as the other business interruption provisions.  As the court explained, the Civil Authority section provided coverage for actual loss of business income and excess expenses "caused by action of civil authority that prohibits access to the described premises" when a "Covered Cause of Loss causes damage to property other than property at the described premise."  *Id.* at *5.  The section was limited to those cases in which (1) "[a]ccess to the area immediately surrounding the damaged property [was] prohibited by civil authority as a result of the damage," and the premises was within a mile of the damaged property; and (2) the civil action was "taken in response to dangerous physical conditions resulting from the damage or

continuation of the Covered Cause of Loss that caused the damage, or the action [was] taken to enable a civil authority to have unimpeded access to the damaged property." *Id.* The court held there could not be coverage under this section because the "other property," like the premises covered by the policy, had not suffered the type of physical damage the plain language of the policy required. *Id.* As the court explained, a "Civil Authority provision requires that the 'other property' have suffered 'damage,' and the complaint does not allege, nor does [the plaintiff] argue, that the closure orders were due to some property within one mile of the [plaintiff's] premises having been damaged by the coronavirus." *Id.* at *6. The court noted that "[i]n holding that the Civil Authority provision does not provide coverage to [the plaintiff], this Court joins the many other courts to have interpreted materially identical provisions in the same manner." *Id.* (citing *Bluegrass Oral Health Ctr.*, 2021 WL 1069038, at *4.)[7]

Bel Air asserts that despite the clear language of the Policy, Great Northern "intended" to provide coverage for losses related to the COVID-19 Pandemic because it did not include an express virus exclusion. (ECF No. 18-9 at 19.) Bel Air is not entitled to coverage in contravention to the plain meaning of "direct physical loss or damage" to property under the Premises Coverage, Business Income with Extra Expense, or the Civil Authority provisions of the Policy simply because of this alleged omission. It is true, as noted above, that the

---

[7] *See also Kahn v. Pa. Nat'l Mut. Cas. Ins. Co.*, -- F. Supp. 3d --, 2021 WL 422607, at *8 (M.D. Pa. Feb. 8, 2021) ("Plaintiffs here do not allege any loss of or damage to another property caused by any 'covered cause of loss' that triggered an action of civil authority."); *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.*, -- F. Supp. 3d --, 2021 WL 105772, at *5 (N.D. Cal. Jan. 12, 2021) ("[I]t is apparent from the plain language of the cited civil authority orders that such directives were issued to stop the spread of COVID-19 and not as a result of any physical loss of or damage to property."); *Gerleman Mgmt., Inc. v. Atl. States Ins. Co.*, -- F. Supp. 3d --, 2020 WL 8093577, at *6 (S.D. Iowa Dec. 11, 2020) ("Plaintiffs have not alleged damage to another property."), *appeal docketed*, No. 21-1082 (8th Cir. Jan. 12, 2021);

Insurance Services Office ("ISO") form endorsement entitled "Exclusion Of Loss Due to Virus Or Bacteria" was promulgated in 2006 in response to a previous SARS outbreak. (*Id.*) The Plaintiff contends that "[t]he ISO published this form exclusion in response to the SARS pandemic and in recognition that virus contagion was at least potentially covered under the standard property policy." (*Id.*) The Plaintiff argues that when Great Northern elected not to include a similar virus exclusion in its property policies, it signaled that it did want to provide virus-related coverage. (*Id.*) This argument is without merit. As the court noted in *Bluegrass Oral Health*, it is "elementary" that "'an exclusion cannot grant coverage.'" *See* 2021 WL 1069038, at *4 (citing *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002)). Omission of an exclusion does not alter the plain language of the provisions under which the Plaintiff seeks coverage, and such provisions simply do not provide coverage for a loss of use unrelated to physical, structural, tangible damage to property.

### B. "Contamination" by the COVID-19 virus does not constitute "direct physical loss or damage" to property.

In an attempt to distinguish itself from other plaintiffs who have failed to assert claims for loss of use due to the COVID-19 Pandemic, Bel Air asserts a new argument in its Motion for Summary Judgment. (ECF No. 18; Memorandum in Support, ECF No. 18-9.) Bel Air claims that COVID-19 did in fact physically "damage" its property, as well as surrounding properties, by "contaminating" the property with the virus. (ECF No. 18-9 at 11-29.) This argument fails for several reasons.

First, this Court notes that Plaintiff Bel Air did not allege that COVID-19 "contaminated" its covered property or other surrounding property in the Amended Complaint. (*See* ECF No. 4.) In granting the defendant's motion to dismiss in *Bluegrass Oral*

*Health*, the court noted the plaintiff's omission of any allegations that the relevant property was actually contaminated by the virus was relevant to its decision.  2021 WL 1069038, at *4. In this case, the Amended Complaint alleges that aerosolized respiratory droplets can remain on a surface and contaminate any person coming into contract with that surface, but Bel Air does not specifically allege that its property or surrounding property was in fact contaminated by the virus.  (*Id.* ¶ 10.)  The Plaintiff in fact concedes that "the SARS-Cov-2 and Covid-19 and the State and local governmental orders *have not resulted in a structural alteration or physical change* to its premises."  (*Id.* ¶ 28 (emphasis added).)  Given that the standard of review for a motion for judgment on the pleadings is the same as a motion to dismiss, *Edwards*, 178 F.3d at 243, the Plaintiff's allegations, and omitted allegations, are relevant in ruling on the Defendant's motion.

Nevertheless, even if the Plaintiff had clearly alleged contamination of its property, the argument still fails.  First, the Plaintiff cannot prevail under the Civil Authority section of the Policy because, as it concedes, the stay at home orders issued by the Governor and County Executive did not actually prohibit Bel Air's use of its facilities.  Bel Air asserts that its operations were, and continue to be, "impaired, diminished, and decreased," but it admits that visitors may still access its facilities.  (*Id.* ¶ 22-25.)  As Bel Air alleges, visitors are required to wear face masks and practice social distancing, but the Amended Complaint does not allege that Bel Air employees or, its customers, ever completely lost use of its facilities.  (*Id.*) Additionally, as noted above, Interpretive Guidance issued on March 23, 2020 made clear that "[a]uto and truck dealerships" were permitted to remain open as essential businesses.  *See* Interpretive Guidance COVID 19-05 (Mar. 23, 2020).  Unlike restaurants, bars, and fitness

centers shuttered by the Governor's stay at home order, Bel Air was never required to completely cease its operations. This is significant. The Civil Authority section explicitly requires that the claimed loss be attributable to "the prohibition of access to" the covered premises or a dependent business premises, by a civil authority. (ECF No. 18-1 at 000067.) In granting a motion to dismiss in *Skillets, LLC v. Colony Ins. Co.*, the court noted that COVID-19 did not cause "physical damage" to property at or near the plaintiff's premises and that "[t]he closure orders restricted the services [the plaintiff] could provide to customers, but '[m]erely restricting access . . . does not trigger coverage under [a] Civil Authority provision.'" No. 3:20cv678-HEH, 2021 WL 926211, at *7 (E.D. Va. Mar. 10, 2021) (quoting *Raymond H Nahmad DDS PA v. Hartford Casualty Ins. Co.*, No. 1:20CV22833-BLOOM/Louis, 2020 WL 6392841, at *9 (S.D. Fla. Nov. 1, 2020)). As Great Northern notes, "if the presence of COVID-19 were actual 'contamination' . . . then every place of business in the State and the country" would have a claim for "contamination," "including hospitals, grocery stores and other businesses where people continue to flock during the pandemic." (ECF No. 27 at 23.)

Second, Bel Air cannot recover for contamination under the Business Income with Extra Expense provision either. As noted above, Maryland law requires this Court to give effect to each clause of a contract such that "a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Muhammad*, 228 A.3d at 1179 (internal citation omitted). The Business Income with Extra Expense section of the Policy provides coverage for "business income loss" incurred "due to the actual impairment of [ ] operations" and "extra expense" incurred "due to the actual or potential impairment of [ ] operations" incurred "*during*

*the period of restoration.*"  (Ex. 1 at 000064, ECF No. 18-1 (emphasis added).)  The "period of restoration" is defined as the period "immediately after the time of direct physical loss or damage by a covered peril to property" and continuing until operations are restored with reasonable speed, including the time required to "repair and replace the property."  (*Id.* at 000124.)  In other words, coverage under this section of the Policy is triggered by physical loss or damage to the property, and the coverage period is defined by the "period of restoration," the time it takes to "repair and replace" the damaged property.  *See Summit Hosp. Grp., Ltd. v. Cincinnati Ins. Co.*, No. 5:20-CV-254-BO, 2021 WL 831013, at *4 (E.D.N.C. Mar. 4, 2021); *see also Moody v. Fin. Grp., Inc.*, -- F. Supp. 3d --, 2021 WL 135897, at *6 (E.D. Pa. Jan. 14, 2021) ("Built into coverage for business income, extra expense, or extended business income losses under the Policy, then, is the idea that there is something to repair, rebuild, or replace.").

In order for the period of restoration definition to have some effect in this case, Bel Air would seemingly need to argue that cleaning surfaces of a property constitutes repair or replacement.  However, as the court held in *Moody*, contamination by the COVID-19 virus would not "render the property useless or uninhabitable or nearly eliminate or destroy its functionality," and "cleaning surfaces cannot reasonably be described as repairing, rebuilding, or replacing property."  *Moody*, 2021 WL 135897, at *6.  In doing so, the court in *Moody* relied on *Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*, in which the U.S. Court of Appeals for the Third Circuit considered whether the presence of asbestos in a building constituted "direct physical loss or damage" to property under New Jersey law.  311 F.3d 226, 235 (3d Cir. 2002).  The Court held that "[i]n ordinary parlance and widely accepted definition, physical damage to property means distinct, demonstrable, and physical alteration of its

structure." *Id.* (quoting 10 *Couch on Ins.*, § 148:46 (3d ed. 1998)).  The Court noted that damages not visible to the eye could qualify as this sort of alteration, but that such damage must "meet a higher threshold" and that asbestos could qualify as such damage "only if an actual release of asbestos fibers . . . has resulted in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable." *Id.* at 236. Particles of a virus are akin to asbestos, or are perhaps more similar to a layer of dust or debris, which courts have held is insufficient to establish physical damage or loss.  *See Rococo Steak, LLC v. Aspen Specialty Ins. Co.*, -- F. Supp. 3d --, 2021 WL 268478, at *4 (M.D. Fla. Jan. 27, 2021) (granting motion to dismiss, stating "[r]ather, like the coating of dust and debris in [*Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020)], the surfaces allegedly contaminated by COVID-19 seem to only require cleaning to fix.")

In sum, "[t]he virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant."  *See Barbizon Sch. of San Francisco, Inc. v. Sentinel Ins. Co. LTD*, No. 20-cv-08578-TSH, 2021 WL 1222161, at *9 (N.D. Cal. Mar. 31, 2021) (citing *Promotional Headwear Int'l v. Cincinnati Ins. Co.*, -- F. Supp. 3d --, 2020 WL 7078735, at *8-*9 (D. Kan. Dec. 3, 2020)).  Plaintiff Bel Air has not had to repair or replace its property due to the Pandemic.  Arguments that the surfaces at its premises needed to be cleaned cannot qualify as restoration, and "[t]o adopt plaintiff's reading, which would allow for intangible damage to trigger coverage, would render other sections of the provision ineffective, which is something the Court cannot do." *Summit Hosp. Grp.*, 2021 WL 831013, at *4 (citing *Woods v. Nationwide Mut. Ins. Co.*, 246 S.E.2d 773, 777 (N.C.

1978) (relying on the same rule as under Maryland law that "every word and every provision [in the policy] is to be given effect")).

### C. The Plaintiff cannot recover under the Policy for losses related to COVID-19.

Quite simply, this Court is unpersuaded that the COVID-19 virus in some way physically altered Bel Air's covered properties or the surrounding areas in a manner that triggers coverage under the plain language of the Policy. A mere loss of use of property is not "physical damage" within the meaning of Maryland law. *See M Consulting & Export, LLC*, 2 F. Supp. 3d at 735-737. Further, "even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to the property," as "routine cleaning . . . eliminates the virus on surfaces," and there is simply "nothing for an insurer to cover" as required to invoke coverage for loss of business income under the Policy.[8] *See Uncork and Create LLC v. Cincinnati Ins. Co.*, -- F. Supp. 3d --, 2020 WL 6436948, at *5 (S.D.W. Va. Nov. 2, 2020). To allow contamination of property to constitute a physical loss would render the "period of restoration" definition meaningless and would "ignore the reality" that businesses like Bel Air "have continued to operate during the pandemic." *Bluegrass, LLC v. State Auto. Mut. Ins. Co.*, No. 2:30-CV-00414, 2021 WL 42050, at *5 (S.D.W. Va. Jan. 5, 2021). As one court within the Fourth Circuit neatly summarized:

> In short, the pandemic impacts human health and human behavior, not physical structures. Those changes in behavior, including changes required by governmental action, caused the Plaintiff economic losses. The Court is not unsympathetic to the situation facing the Plaintiff and other businesses. But the unambiguous terms of the Policy do not provide coverage for solely economic losses unaccompanied by physical property damage.

---

[8] This Court need not consider the applicability of the Acts Or Decision exclusion in this case, as there is no coverage under the plain language of the allegedly applicable provisions.

*Uncork and Create*, 2020 WL 6436948, at *5.  Having considered the allegations in the pleadings and briefs, this Court finds there is no genuine issue of material fact as to the Plaintiff Bel Air's claims, and this Court will grant the Defendant's Motion for Judgment on the Pleadings (ECF No. 26).

## CONCLUSION

For these reasons, the Plaintiff Bel Air's Motion for Summary Judgment (ECF No. 18) is DENIED.  The Plaintiff Bel Air's Motion for Other Relief to Certify Questions of Law to the Maryland Court of Appeals (ECF No. 19) is also DENIED.  The Defendant Great Northern's Motion for Judgment on the Pleadings (ECF No. 26) is GRANTED.  Judgment will be entered in favor of the Defendant.

A Separate Order follows.


Dated: April 14, 2021




_____/s/_____
Richard D. Bennett
United States District Judge

28